## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| v. | ) **Civil Case No.** |
| | ) |
| **$3,031,059.45  IN U.S. CURRENCY** | ) |
| **FUNDS SEIZED FROM JP** | ) |
| **MORGAN CHASE ACCOUNT** | ) |
| **ENDING IN #5012, ET AL.** | ) |

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

COMES NOW the United States of America, (the "United States" or the "Government"), by and through Jill E. Steinberg, United States Attorney for the Southern District of Georgia, and J. Bishop Ravenel, Assistant United States Attorney, and brings this Verified Complaint for Civil Forfeiture *In Rem*, with the following allegations:

### NATURE OF THE ACTION

1.      *In Rem* civil forfeiture is permissible under Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

2.      The Defendants *In Rem* are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) on the grounds that the Defendant Property, as defined later herein, is property involved in money laundering and conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956 and 1957.

### THE DEFENDANTS *IN REM*

3.      Collectively, the Defendants *In Rem* (hereinafter, collectively the **"Defendant Property"**) represent the following assets:

a.   $3,031,059.45 in U.S. Currency Funds seized from JP Morgan Chase Bank Account ending in 5012, then controlled by OHANSON'S, LLC (**"Defendant Property 1"**);

b.   $92,166.94 in U.S. Currency Funds seized from JP Morgan Chase Bank Account ending in 6716, then controlled by JEANS JEWELRY STORE (**"Defendant Property 2"**);

c.   1570 Pieces of Assorted Silver, Gold, and Other Valuable Metals, valued at approximately $418,131.00, seized from OHANSON'S, LLC located at 607 South Hill Street, Suite 915, Los Angeles, CA (**"Defendant Property 3"**);

d.   643 Pieces of Assorted Platinum, Gold, Silver, and Other Valuable Metals, valued at approximately $2,106,979.00, seized from OHANSON'S, LLC located at 607 South Hill Street, Suite 520, Los Angeles, CA (**"Defendant Property 4"**); and

e.   1230 Pieces of Assorted Jewelry including loose diamonds, gold jewelry, and Valuable Metals, valued at approximately $2,509,259.25, seized from JEANS JEWELRY STORE located at the Asian Garden Mall at 9200 Bolsa Avenue, Westminster, CA (**"Defendant Property 5"**).

**Defendant Property 1** and **Defendant Property 2** were seized on or about August 26, 2020, from accounts held by JP Morgan Chase Bank as the result of federal seizure warrants authorized on or about August 23, 2020, in the Southern District of Georgia and in support of the criminal investigation and prosecution in the Southern District of Georgia.   **Defendant Property 3**, **Defendant Property 4**, and **Defendant Property 5** were seized pursuant to federal search warrants executed on or about August 26, 2020, in the Central District of California and in support of the criminal investigation and prosecution in the Southern District of Georgia.

## JURISDICTION AND VENUE

4.     The United States brings this action *In Rem* in its own right to forfeit the **Defendant Property**.

5.     This Court has jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345.

6.     The Court has jurisdiction over an action for forfeiture pursuant to 28 U.S.C. § 1355(a).

7.     The Court has *In Rem* jurisdiction over the **Defendant Property** pursuant to 28 U.S.C. § 1355(b).

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1) because acts and/or omissions giving rise to the forfeiture of the **Defendant Property** occurred in this district.

## FACTS AND BASIS OF FORFEITURE

### Overview of Investigation

9.     This forfeiture action stems from the seizure of the **Defendant Property**, which was determined to be involved in money laundering, currently under investigation by the Department of Interior, U.S. Fish and Wildlife Service ("USFWS"), Drug Enforcement Administration ("DEA"), and other law enforcement organizations.

10.     Particularly, the **Defendant Property** is forfeitable to the United States, as property involved in money laundering and money laundering conspiracy,

relating to a scheme to launder money using precious and other valuable metals and jewelry, and using several businesses.

11.     The criminal operation laundered money purported to derive from illegal drug sales in the Southern District of Georgia, and it is also believed to involve the laundering of money from additional illegal activity, including but not limited to violations of 21 U.S.C. §§ 841 and 846.

<u>Background of the Criminal Investigation and Prosecution</u>

12.     Since in or about 2015, the above-listed federal law enforcement agencies, and others, have been investigating a transnational criminal organization ("TCO") engaged in international money laundering, drug trafficking, wildlife trafficking, and other crimes.  Members of this TCO are located throughout the United States and in Canada, Mexico, and Hong Kong.  Members of this TCO are associated with Mexican drug trafficking organization(s) and Asian organized crime.

13.     Agents were able to determine that a number of people, including but not limited to Terry Xing Zhao Wu, Woonjin Lam, Anthony Wu, Ying Le Pang, Heather Huong Ngoc Luu, Lam Phuoc Quang, Kevin Chinh Nguyen, Elias Samuel Castellanos, and Terry Louis Shook (collectively "Criminal Defendants") and others, were members and associates of the Wu TCO, whose members and associates engaged in wire fraud, mail fraud, international wildlife trafficking, drug trafficking, and money laundering, among other crimes, within the Southern District of Georgia, and elsewhere.

14.     Agents determined that the purpose of the Wu TCO was to make money from illegal activities, including wildlife trafficking and drug trafficking.  Agents further determined that the Wu TCO sought to hide millions of dollars in illegal proceeds by laundering money through businesses and bank accounts.  Agents determined the manner and means of this conspiracy.

15.     Essentially, one or more members of the conspiracy would, among other actions:

      a.     make money by distributing marijuana in violation of federal law;

      b.     cause bulk cash to be mailed to California for advanced payment of marijuana;

      c.     cause wire transfers of money to bank accounts for advanced payment of marijuana;

      d.     causing mailings of marijuana from California to Savannah, Georgia, within the Southern District of Georgia;

      e.     hide illegal drug proceeds as purported seafood transactions;

      f.     cause the wiring of illegal drug proceeds to third party business accounts to hide the illegal profits;

      g.     charge a commission fee for unlawfully depositing millions of dollars of illegal profits into business accounts to hide the illegal profits;

      h.     cause deposits of bulk cash from drug trafficking into third party business accounts that dealt in gold, precious metals, and jewels to hide the illegal profits; and

i.    cause deposits of millions of dollars from illegal activities into third party business accounts located in the United States, Mexico, and Hong Kong, all to hide the illegal profits.

16.    The above-listed Criminal Defendants, and others, were involved in the drug trafficking and money laundering aspect of the illegal operation.

17.    On or about July 8, 2020, a federal grand jury presiding in the Southern District of Georgia returned an indictment charging the above-listed Criminal Defendants, and others, for their roles in conspiracies to engage in wire and mail fraud, drug trafficking, and money laundering, which included a forfeiture allegation. Docket No. 4:20-cr-56 ("Criminal Docket") at Doc. 3.

18.    On or about October 23, 2020, November 9, 2020, January 19, 2021, and December 2, 2022, several bills of particulars were filed, addressing the **Defendant Property** and other property.  Criminal Docket at Docs. 225, 245, 327, and 728.

19.    On or about November 24, 2020 and January 27, 2021, the Court entered Orders Allowing the Government to Maintain Custody of Seized Assets pursuant to 18 U.S.C. § 983(a)(3)(B)(ii)(II), including but not limited to the **Defendant Property**.  Criminal Docket at Docs. 267, 268, and 330.

20.    On or about April 24, 2023, a federal seizure warrant was executed regarding **Defendant Property 3**, **Defendant Property 4**, and **Defendant Property 5**.

Factual Summary Regarding **Defendant Property**

21.     On August 26, 2020, federal search warrants were executed at OHANSON's LLC located at 607 South Hill Street, Suite 915 and Suite 520, Los Angeles, CA ("OHANSON'S"), and JEANS JEWLERY STORE located at the Asian Garden Mall at 9200 Bolsa Avenue, Westminster, CA ("JEANS JEWELRY").

22.     Through those search warrants, **Defendant Property 3**, **Defendant Property 4**, and **Defendant Property 5** were seized.

23.     Particularly, **Defendant Property 3** and **Defendant Property 4** were seized from OHANSON'S, and **Defendant Property 5** was seized from JEANS JEWELRY.

24.     The investigative efforts leading up to those searches and seizures are detailed below.  In sum, JEANS JEWELRY and OHANSON'S laundered purported illegal drug proceeds within the Southern District of Georgia, and elsewhere, and are believed to have engaged in more extensive money laundering operations, using the **Defendant Property** to do so.

25.     On August 30, 2019, JEANS JEWELRY received a wire transfer in the amount of $243,857.75 and another transfer on September 4, 2019, in the amount of $240,000.00, both from OHANSON'S bank account, **Defendant Property 1**, into JEANS JEWELRY'S bank account, **Defendant Property 2**.

26.     On September 3, 2019, Primus Pharma, an account controlled by Heather Luu, received a wire transfer in the amount of $99,000.00 from JEANS JEWELRY'S bank account, **Defendant Property 2**.

27.     On September 4, 2019, Colwort Inc., another company controlled by Heather Luu, wire transferred $94,000 to a DEA undercover ("UC") bank account, which was a money laundering payment made by Heather Luu to the DEA undercover agent in exchange for purported drug trafficking proceeds.

28.     On September 16, 2019, **Defendant Property 2** (JEANS JEWELRY bank account) deposited funds from **Defendant Property 1** (OHANSON'S bank account) in the amount of $171,388.87.

29.     On September 17, 2019, **Defendant Property 2** (JEANS JEWELRY bank account) received a wire transfer from **Defendant Property 1** (OHANSON'S bank account) in the amount of $96,514.30.

30.     In September of 2019, UC Agent Vuong arranged to deliver $200,000.00 in DEA Official Advanced Funds to Heather Luu.   During the meeting, Heather Luu introduced Lam Phuoc Quang to DEA UC Agent Vuong.   The $200,000 was represented to Heather Luu and Lam Phuoc Quang to be proceeds from illegal narcotics trafficking.   Quang took possession of the $200,000.00 bulk cash from UC Agent Vuong, and Heather Luu laundered and caused to be wired two separate wire transfers in the amounts of $99,000.00 and $89,000.00 back into the DEA UC bank account from business accounts, JEANS JEWELRY and Colwort Inc.   JEANS JEWELRY, using **Defendant Property 2**, sent a wire transfer of $99,000.00 directly to a DEA UC account on September 23, 2019.   The wire transfer in the amount of $89,000.00 was sent from a Colwort Inc. account at US Bank on September 23, 2019, after Colwort received a wire transfer on September 20, 2019 in the amount of

$99,000.00 from **Defendant Property 2** (JEANS JEWELRY account).   On September 19, 2019, **Defendant Property 2** (JEANS JEWELRY bank account) received a wire transfer from **Defendant Property 1** (OHANSON'S bank account) in the amount of $240,642.75.

31.     In October of 2019, UC Agent Vuong arranged to deliver $200,000.00 in DEA Official Advanced Funds to Heather Luu.  The $200,000 was represented to Heather LUU to be proceeds from illegal narcotics trafficking.  During the meeting, Heather LUU was accompanied by Elias Castellanos.  Castellanos took possession of the $200,000.00 bulk cash from UC Agent Vuong, and Heather Luu proceeded to launder the funds by sending a wire in the amount of $188,000.00 into the DEA UC bank account from a business account in the name of Primus Pharma Inc.  Heather LUU was at the time the beneficial owner of Primus Pharma.  The Primus Pharma account received a wire transfer of $198,000.00 from **Defendant Property 2** (JEANS JEWELRY bank account) days before the wire was sent to the DEA UC bank account.  Prior to wiring funds to Primus Pharma, JEANS JEWELRY received a wire transfer from another person in the amount of $152,500.00, and on October 25, 2019, a wire transfer from **Defendant Property 1** (OHANSON'S bank account) in the amount of $193.414.40 into **Defendant Property 2** (JEANS JEWELRY bank account).

32.     In December of 2019 and January of 2020, UC Agent Vuong communicated with Heather Luu regarding Luu traveling to Savannah, Georgia, to pick up $500,000.00 in DEA Official Advanced Funds from UC Agent Vuong to be

laundered.  The $500,000 was represented to Heather Luu to be proceeds from illegal narcotics trafficking.

33.    In January of 2020, Heather Luu and Lam Phuoc Quang traveled to Savannah, Georgia, where they met with UC Agent Vuong at an undercover warehouse located in Savannah, Georgia.  UC Agent Vuong turned over $500,000.00 bulk currency to Luu and Quang.  Luu and Quang ultimately transported the $500,000.00 bulk currency back to Los Angeles, California by driving different rental vehicles.  Luu successfully laundered the $500,000.00 for UC Agent Vuong through multiple wire transfers, teller transfers, and bulk currency money pickups to be returned to UC Agent Vuong minus Luu's 10% commission fee.  The following is a list of wire transfers conducted to launder the bulk currency for UC Agent Vuong:

a.    January 9, 2020, $70,000.00 was wired back into the DEA UC Account from business account, S&T U.S. Inc.

b.    January 13, 2020, $198,000.00 was wired back into the DEA UC Account.  The funds were wire transferred directly from **Defendant Property 2** (JEANS JEWELRY account) on January 13, 2020, and on the same day **Defendant Property 2** (JEANS JEWELRY bank account) received a transfer from **Defendant Property 1** (OHANSON'S bank account) in the amount of $249,323.25.

c.    February 6, 2020, $16,670.00 was wired back into the DEA UC Account from a personal bank account of another person.

d.    February 18, 2020, $80,000.00 was wired back into the DEA UC Account from **Defendant Property 2** (JEANS JEWELRY bank account).  On

February 19, 2020, **Defendant Property 2** (JEANS JEWELRY bank account) received a wire transfer in the amount of $206,338.70 from **Defendant Property 1** (OHANSON'S bank account). The DEA undercover officer received an invoice for 51 ounces of 24k gold for $80,000.00 from Heather LUU, purporting to be the basis of the transaction.

   e.   February 25, 2020, $72,315.00 was wired back into the DEA UC Account from a business account.

34.   On or about February 26, 2020, Heather Luu and Kevin Nguyen were stopped in an automobile by local law enforcement in Mesa County, Colorado, and, after a drug sniffing K-9 alerted on the vehicle, found in possession of approximately $170,640 in cash and a jewelry receipt showing Luu sold gold jewelry to JEANS JEWELRY for $199,950 which was paid by wire transfer to a bank account (the DEA UC Account).

35.   During the course of this approximately two-month period, Heather Luu, with the help of Castellanos and Quang, laundered approximately $1,000,000 of purported illegal drug proceeds, while conducting aspects of the laundering operation in the Southern District of Georgia.

36.   In June 2022, agents conducted a proffer interview of Heather Luu. Heather Luu admitted to delivering bulk cash to JEANS JEWELRY and dealing with Michael Luu (JEANS JEWELRY General Manager). Heather Luu stated she paid one percent to have the cash returned to her in the form of a JEANS JEWELRY business check or a wire transfer from JEANS JEWELRY. Heather Luu stated she

did not purchase or receive gold in exchange for the bulk cash she delivered to JEANS JEWELRY.

37.    In November 2022, agents conducted a proffer interview of Elias Castellanos.  Castellanos admitted accompanying Heather Luu on four separate occasion to JEANS JEWELRY to deliver bulk cash.  On three of the occasions, Castellanos entered JEANS JEWELRY with Heather LUU, and on one occasion he waited in a restaurant at the Asian Mall where JEANS JEWELRY was located. Castellanos stated Heather Luu received checks drawn from JEANS JEWELRY business account in the amount of one percent less than the amount of bulk cash she delivered to JEANS JEWELRY. Castellanos also stated Heather Luu never purchased gold with the cash she delivered to JEANS JEWELRY.

38.    Based on information gathered in this investigation, including the undercover operation, JEANS JEWELRY and OHANSON'S are believed to have conducted money laundering operations using precious and other valuable metals and jewelry as a pretext for laundering money.  These items were purchased and quickly sold in quick succession, with JEANS JEWELRY and OHANSON'S retaining a small profit, their money laundering fee, while no gold, silver, jewelry, or other similar items, including but not limited to **Defendant Property 1**, **Defendant Property 2**, or **Defendant Property 3**, ever changed hands.  These organizations are believed to have laundered proceeds of criminal activity, including but not limited to violations of 21 U.S.C. §§ 841 and 846.

39.    Records of wire transfers show that from November 2012 through November 2019, OHANSON'S was the originator of over approximately $944 million in wire transfers and for the same period OHANSON'S was the beneficiary of approximately $935 million in wire transfers, including through **Defendant Property 1**.  OHANSON'S total deposits from January 2017 through February 2020 were approximately $581 million while total debits for the same period were approximately $580 million, including through **Defendant Property 1**.  These margins from these inbound and outbound money deposits, debits, and transfers are consistent with money laundering.

40.    Between August 1, 2019 and February 28, 2020, JEANS JEWELRY, using **Defendant Property 2**, received approximately $10.9 million from OHANSON'S, using **Defendant Property 1**, and paid OHANSON'S approximately $441,955.94.  Bank records from JEANS JEWELRY, using **Defendant Property 2**, show that between January 3, 2017 and August 21, 2020, JEANS JEWELRY received approximately $27.3 million from OHANSON'S, using **Defendant Property 1**.  During that same period JEANS JEWELRY, using **Defendant Property 2**, paid OHANSON'S, using **Defendant Property 1**, approximately $19 million.

41.    Bank and business records show that **Defendant Property 1** (OHANSON'S bank account) was used to purchase assorted platinum, gold, silver, and other precious metals from multiple sources.

42.     Bank and business records show that **Defendant Property 2** (JEANS JEWELRY'S bank account) was used to purchase gold, diamonds, and other precious metals from multiple sources.

43.     The large disparity between the financial transactions, in the 100's of millions of dollars, and the amount of precious and valuable metals and jewelry recovered at OHANSON'S and JEANS JEWELRY, totaling less than $10,000,000.00, along with the margins between the inbound and outbound financial transactions, is consistent with money laundering and indicates **Defendant Property 3**, **Defendant Property 4**, and **Defendant Property 5** were used to launder money under the pretext of an exchange of money for precious and valuable metals and jewelry, which then led to financial transactions including wire transfers completed through **Defendant Property 1** and **Defendant Property 2**, to return clean money and complete the money laundering interchange.

44.     Accordingly, JEANS JEWELRY and OHANSON'S were, during the time period described herein, involved in money laundering and their businesses, purporting to deal legitimately in valuable metals and jewelry, were front operations for that money laundering, including but not limited to proceeds and purported proceeds of violations of 21 U.S.C. §§ 841 and 846 (drug trafficking and conspiracy). Further, based on the amount of money moving via wire transfers, cash exchanges, and other means, and other evidence in this case, the **Defendant Property** was used to facilitate the money laundering operations of both entities and involved in the money laundering conspiracy.

45.     By the foregoing and other acts, the **Defendant Property** is subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) on the grounds that the **Defendant Property** is property involved in violations of 18 U.S.C. §§ 1956 and 1957.

## <u>CLAIMS FOR RELIEF</u>

<u>First Claim for Relief</u>
(Forfeiture Pursuant to 18 U.S.C. § 981(a)(1)(A))

46.     The United States incorporates by reference the allegations contained in paragraphs 1 through 45 above as if set forth fully herein.

47.     The **Defendant Property** is property that is involved in and/or traceable to transactions or attempted transactions of a value greater than $10,000 in property derived from specified unlawful activity, including but not limited to violations of 21 U.S.C. §§ 841 and 846, in violation of 18 U.S.C. § 1957.

48.     The **Defendant Property** is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

<u>Second Claim for Relief</u>
(Forfeiture Pursuant to 18 U.S.C. § 981(a)(1)(A))

49.     The United States incorporates by reference the allegations contained in paragraphs 1 through 45 above as if set forth fully herein.

50.     The **Defendant Property** is property that is involved in, and/or is traceable to transactions or attempted transactions designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity, including but not limited to violations of 21 U.S.C. §§ 841 and 846, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

51.     The **Defendant Property** is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

<u>Third Claim for Relief</u>
(Forfeiture Pursuant to 18 U.S.C. § 981(a)(1)(A))

52.     The United States incorporates by reference the allegations contained in paragraphs 1 through 45 above as if set forth fully herein.

53.     The **Defendant Property** is property that is involved in, and/or is traceable to transactions or attempted transactions designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the property believed to be proceeds of violations of 21 U.S.C. §§ 841 and 846, in violation of 18 U.S.C. § 1956(a)(3).

54.     The **Defendant Property** is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

<u>Fourth Claim for Relief</u>
(Forfeiture Pursuant to 18 U.S.C. § 981(a)(1)(A))

55.     The United States incorporates by reference the allegations contained in paragraphs 1 through 45 above as if set forth fully herein.

56.     The **Defendant Property** is property involved in a conspiracy to commit violations of 18 U.S.C. § 1956(a)(1)(B)(i) and (a)(3) and § 1957, in violation of 18 U.S.C. § 1956(h).

57.     The **Defendant Property** is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

## <u>CONCLUSION</u>

58.    WHEREFORE, the United States of America prays that:

a.    Process of a Warrant for Arrest and Notice *In Rem* be issued for the arrest of the **Defendant Property**;

b.    The **Defendant Property** be forfeited and condemned to the use and benefit of the United States;

c.    The United States be awarded its costs and disbursements in this action and for such other and further relief as this Court deems just and proper; and

d.    That due notice be given to all parties to appear and show cause why the forfeiture of the **Defendant Property** should not be decreed.

Respectfully submitted,

JILL E. STEINBERG
UNITED STATES ATTORNEY

By:    */s/ J. Bishop Ravenel*
J. Bishop Ravenel
Assistant United States Attorney
Virginia Bar Number 70250
P.O. Box 8970
Savannah, GA 31412
(912) 652-4422

## VERIFICATION OF COMPLAINT FOR FORFEITURE *IN REM*

I, Special Agent Harry D. Hamrick, have read the foregoing Complaint for Forfeiture *In Rem* in this action and state that its contents are true and correct to the best of my knowledge and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

This 25th day of April 2023.

_____
HARRY D. HAMRICK
SENIOR SPECIAL AGENT
UNITED STATES FISH & WILDLIFE SERVICE