IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

```
UNITED STATES OF AMERICA,        *
                                 *
       Plaintiff,                *
                                 *
       v.                        *          CV 423-112
                                 *
$3,031,059.45 IN US CURRENCY     *
FUNDS SEIZED FROM JP MORGAN      *
CHASE ACCOUNT ENDING IN #5012,   *
et al.,                          *
                                 *
       Defendants.               *
                                 *
```

_____

**O R D E R**

_____

Presently pending before the Court are several motions filed by the United States and claimants. The Court addresses the motions below.

## I. BACKGROUND

This is an *in rem* forfeiture action filed by the United States under Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"). (Doc. 82, at 1-2.) The Defendants *In Rem* are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) on the grounds it is property involved in money laundering and conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956 and

1957.   (Id. at 2.)    The Defendants *In Rem* (hereinafter, collectively the "Defendant Property") include the following:

    a. $3,031,059.45 in U.S. Currency seized from JP Morgan Chase ("Chase") Bank Account ending in 5012, then controlled by Ohansons, LLC ("Ohansons") ("Defendant Property 1");

    b. $92,166.94 in U.S. Currency seized from Chase Bank Account ending in 6716, then controlled by Jeans Jewelry Store ("Jeans Jewelry") ("Defendant Property 2");

    c. 1570 pieces of assorted silver, gold, and other valuable metals seized from Ohansons located at 607 South Hill Street, Suite 915, Los Angeles, CA ("Defendant Property 3");

    d. 643 pieces of assorted platinum, gold, silver, and other valuable metals, seized from Ohansons located at 607 South Hill Street, Suite 520, Los Angeles, CA ("Defendant Property 4");

    e. 1230 pieces of assorted jewelry including loose diamonds, gold jewelry, and valuable metals, seized from Jeans Jewelry located at the Asian Garden Mall at 9200 Bolsa Avenue, Westminster, CA ("Defendant Property 5").

(Id. at 2-3.) Defendant Property 1 and Defendant Property 2 were seized on August 26, 2020 as the result of federal search warrants in support of a criminal investigation and prosecution in this District. (Id. at 3.) Defendant Property 3, Defendant Property

4, and Defendant Property 5 were seized on August 26, 2020 pursuant to federal search warrants in the Central District of California in support of a criminal investigation and prosecution in this District. (Id.)

The United States brings this action in its own right to forfeit the Defendant Property. (Id.) The Court has jurisdiction pursuant to 28 U.S.C. §§ 1345, 1355(a) and has jurisdiction over the Defendant Property pursuant to 28 U.S.C. § 1355(b). (Id.) Venue is proper in this District under 28 U.S.C. § 1355(b)(1) because the acts and/or omissions giving rise to the forfeiture of the Defendant Property occurred in this District. (Id. at 4.)

This forfeiture stems from the seizure of the Defendant Property through an investigation by the Department of Interior, U.S. Fish and Wildlife Service ("USFWS"), Drug Enforcement Administration ("DEA"), and other law enforcement organizations. (Id.) Since 2015, these law enforcement organizations have been investigating a transnational criminal organization ("TCO") engaged in international money laundering, drug trafficking, wildlife trafficking, and other crimes. (Id. at 4-5.) The members of the TCO were located throughout the United States, Canada, Mexico, and Hong Kong and were associated with Mexican drug trafficking organizations and Asian organized crime. (Id. at 5.) Agents identified several individuals who were members and associates of the Wu TCO and engaged in wire fraud, mail fraud,

international wildlife trafficking, drug trafficking, and money laundering, among other crimes, in the Southern District of Georgia, and elsewhere. (Id.)  Agents determined the Wu TCO's purpose was to make money from illegal activities, and the WU TCO sought to hide millions of dollars in illegal proceeds by laundering money through businesses and bank accounts. (Id.)  On July 8, 2020, a federal grand jury in this District returned an indictment charging the individuals as criminal defendants for their roles in conspiracies to engage in wire and mail fraud, drug trafficking, and money laundering. (Id. at 6-7.)  The indictment included a forfeiture allegation. (Id. at 7.)

On August 26, 2020, federal search warrants were executed at Ohansons and Jeans Jewelry. (Id.)  Defendant Property 3 and Defendant Property 4 were seized from Ohansons and Defendant Property 5 was seized from Jeans Jewelry. (Id.)  Based on an undercover investigation involving multiple wire transfers, the United States seized Defendant Property 1 (Ohansons' bank account) and Defendant Property 2 (Jeans Jewelry's bank account). (Id. at 8-14.)

The United States filed its original Verified Complaint on April 26, 2023. (Doc. 1.)  These claimants filed claims: Sirag Gold, Inc. ("Sirag") (Doc. 13); Kahan Jewelry Corp. ("Kahan") (Doc. 14); Talfel, Inc. ("Talfel") (Doc. 17); Diamond Bazar (Doc. 23); Jeans Jewelry (Doc. 24); Ohansons (Doc. 29); Rodger Virtue as

4

trustee of the Rodger J. Virtue Revocable Trust ("Virtue") (Doc. 32); and Uneek Jewelry, Inc. and Benjamin Javaher (collectively, "Uneek") (Doc. 35).  The United States filed its Amended Verified Complaint on August 31, 2023.  (Doc. 82.)  These claimants filed amended claims in response: Kahan (Doc. 83); Sirag (Doc. 100).

Several motions are currently pending before the Court.  On January 5, 2024, Sirag, Uneek Jewelry, Javaher, SOON OK, Inc. ("SOON"), and Virtue moved to transfer the case to the Central District of California.  (Doc. 112.)  Talfel (Doc. 116) and Jeans Jewelry (Doc. 121) joined the motion to transfer.[1]  The United States has filed two motions to strike, first a motion to strike the claim of Virtue (Doc. 119) and a motion to strike the claims of various claimants (Doc. 136).  The United States also moves the Court to stay consideration of the claimants' motion to transfer, discovery issues, and other relevant filings, and moves to extend the United States' time to respond to these Court orders and motions.  (Doc. 120.)

The Court first addresses the motions to strike, as they turn to the standing of the claimants.  <u>See</u> <u>United States v. $1,185,135.00 in U.S. Currency</u>, 320 F. App'x 893, 894 (11th Cir. 2008) ("Standing is a threshold jurisdictional question which must

---

[1] Talfel and Jeans Jewelry moved to join the motion to transfer.  (Docs. 116, 121.) The Court **GRANTS** their motions, and considers them to be Parties moving to transfer the case to the Central District of California.

be addressed prior to and independent of the merits of a party's claims." (citation and quotation marks omitted)).

## II. LEGAL STANDARD

"A claimant in a civil forfeiture action must establish both the requirements of Article III standing and statutory standing." United States v. $11,320.00 in U.S. Currency, 880 F. Supp. 2d 1310, 1322 (N.D. Ga. 2012) (citing United States v. $688,670.42 Seized from Regions Bank Account No. XXXXXXXXXX, 449 F. App'x 871, 873 (11th Cir. 2011) (per curiam); United States v. $114,031.00 in U.S. Currency, 284 F. App'x 754, 755 (11th Cir. 2008) (per curiam)).

## A. Article III Standing

"It is well established that in order to contest a forfeiture, a claimant first must demonstrate a sufficient interest in the property to give him Article III standing; otherwise, there is no 'case or controversy,' in the constitutional sense, capable of adjudication in the federal courts." United States v. $38,000.00 Dollars in U.S. Currency, 816 F.2d 1538, 1543 (11th Cir. 1987) (citations omitted). While a claimant need not prove the merits of his claim, it must show some "colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement." Kadonsky v. United States, 216 F.3d 499, 508 (5th Cir. 2000) (citation omitted). A claimant can meet this threshold

requirement by showing some ownership or possessory interest in the property, but a "bare assertion of ownership in the property, without more, is not enough to prove an ownership interest sufficient to establish standing." $11,320.00 in U.S. Currency, 880 F. Supp. 2d at 1323 (citation omitted).

**B. Statutory Standing**

"A claimant also must satisfy the statutory standing requirements to challenge a forfeiture. The claimant bears the burden of establishing standing." Id. (citation omitted). "[The Supplemental Rules] and 18 U.S.C. § 983(a)(4) govern civil forfeiture actions and set forth statutory standing requirements for contesting a forfeiture." United States v. $59,260.00 U.S. Currency, No. 2:18-CV-95, 2018 WL 8665266, at *2 (S.D. Ga. Dec. 19, 2018) (quoting $11,320.00 in U.S. Currency, 880 F. Supp. 2d at 1323). Rule G(5)(b) provides: "A claimant must serve and file an answer to the complaint or a motion under Rule 12 within 20 days after filing the claim." Supp. R. G(5)(b). "[C]laimants must strictly adhere to the procedural requirements of the Supplemental Rules to achieve statutory standing to contest a forfeiture action." United States v. $12,126.00 in U.S. Currency, 337 F. App'x 818, 820 (11th Cir. 2009) (citation omitted).

### III. MOTIONS TO STRIKE

The United States moves to strikes the claims of Virtue (Doc. 119) and the claims of Sirag; Kahan; Talfel; and Uneek (Doc. 136). Virtue opposes the motion to strike his claim (Doc. 127), and the United States replied (Doc. 134). There were several responses to the United States' other motion to strike (Docs. 142, 144, 145, 146, 147), and the United States replied (Doc. 148). Thus, the motions have been fully briefed and are ripe for the Court's review.

Rule G(8)(c) of the Supplemental Rules provides:

(i) At any time before trial, the government may move to strike a claim or answer:
    (A) for failing to comply with Rule G(5) or (6), or
    (B) because the claimant lacks standing.
(ii) The motion:
    (A) must be decided before any motion by the claimant to dismiss the action; and
    (B) may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence.

Supp. R. G(8)(c).

### A. Motion to Strike Virtue

First, the United States moves to strike the claim of Virtue (Doc. 32) under Rule G(8)(c) of the Supplemental Rules. (Doc. 119.) It argues Virtue's claim identifies no relationship to the property, the nature of his ownership interest, fails to plead a legally cognizable ownership interest, and provides no information

suggesting a possessory interest. (Id. at 1.)  As a result, the United States argues Virtue's claim does not comply with Rule G(5) and lacks both statutory and Article III standing. (Id.)  In response, Virtue argues he sufficiently showed an ownership interest in these seized assets, and should be provided the opportunity to conduct discovery to obtain information from records seized from Ohansons. (Doc. 127, at 1-2.)  In reply, the United States again argues Virtue lacks standing. (Doc. 134, at 14-15.)

Virtue claims ownership interest in the following: (1) 1,500 ounces of platinum powder and any tangible or intangible proceedings of that asset, which originally was in a vault in New York City maintained by Heraeus when it was purchased on May 21, 2020; and (2) 300 ounces of gold, which originally was in the form of three 100-ounce gold bars, and any tangible or intangible proceeds of that assert, which gold was purchased at the Commodity Exchange in New York City on May 26, 2020. (Doc. 32, at 1.)  The United States argues this claim fails to establish standing because it fails to identify the specific property sought for forfeiture, fails to identify Virtue's ownership interest, and fails to provide more than a bare assertion of ownership. (Doc. 119, at 9.)  The Court agrees.

Virtue argues the claimed metals were purchased through Ohansons, and Ohansons was not required to hold the precious metals

for him, but could exchange the metals for a comparable form and forward them to Virtue or any third party at his direction or sell them for Virtue and forward him the proceeds.  (Doc. 127, at 7.) He argues the purchased metals and tangible and intangible proceeds were held by Ohansons for him to be sent to him at his request. (Id.)   Virtue argues the United States failed to identify the seized assets with reasonable particularity as required by Rule G(2)(c), so his obligation under Rule G(5)(a)(i) was not triggered. (Id. at 9.)   The United States rebuts Virtue's arguments considering the fact its Amended Complaint included 100+ pages of property descriptions.  (Doc. 134, at 17.)

In Virtue's affidavit, he represents he has been buying and selling precious metals from Ohansons since 1987, and in May 2020, he contacted Mr. Ohanian, his primary contact at Ohansons, to buy 1,500 ounces of platinum.  (Doc. 127-1, at 1-2.)  On May 21, 2020, he wired $1,276,650.00 to Ohansons' Chase bank account and was informed Ohansons purchased 1,500 ounces of platinum for him.  (Id. at 2.)  On July 30, 2020, he wired an additional $4,350.00 to cover the difference between the price per ounce he expected and what was paid.  (Id.)   On May 26, 2020, Ohansons also bought Virtue three 100-ounce gold bars for a cost of $510,800.00.  (Id. at 2-3.)  He wired $290,459.00, which was the balance he owed after deductions for silver coins and gold applied as partial payment. (Id. at 3.)

As to Article III standing, "a claimant must show that he has a colorable ownership or possessory interest in the [property]." $11,320.00 in U.S. Currency, 880 F. Supp. 2d at 1323 (citation omitted).  While Virtue puts forth evidence of his transactions with Ohansons though his affidavit, attached emails, and his own handwritten notes, the Court finds this insufficient to show Article III standing.  Virtue himself states he had an oral agreement with Ohansons that it was not required to hold precious metals it purchased for him, but could exchange them in comparable form or sell them and forward sale proceeds if directed.  (Doc. 127-1, at 3.)  Thus, at the time the United States seized the Defendant Property, Virtue has no idea if his possessions were in physical form or had been converted to proceeds held in Ohansons' bank account.  (Id. at 4-5.)  While Virtue argues discovery is necessary for him to establish his ownership, the Eleventh Circuit has held that a claimant does not need discovery to assert the true owner of claimed property.  United States v. $260,242.00 U.S. Currency, 919 F.2d 686, 688 (11th Cir. 1990).  The notes showing Virtue completed wire transfers to Ohansons and the brief and inconclusive emails attached to his affidavit merely show Virtue engaged in transactions with Ohansons, and money changed hands.  (See Doc. 127-1.)  Even so, Virtue provided no evidence connecting him to the Defendant Property seized from Ohansons.  Thus, the

Court finds Virtue lacks Article III standing and **STRIKES** Virtue's claim (Doc. 32).

**B. Motion to Strike Various Claims**

Next, the United States moves to strike the claims of Sirag (Doc. 100), Kahan (Doc. 83), Talfel (Doc. 17), and Uneek (Doc. 35). (Doc. 136, at 1.) The Court addresses the claimants in turn.

1. <u>Sirag</u>

First, the United States moves to strike Sirag's claim for lack of standing. (<u>Id.</u> at 22.) It argues Sirag is an unsecured creditor and fails to establish a recognized property interest because Sirag was part of a sale, not a bailment. (<u>Id.</u> at 22-24.)

Sirag filed two claims (Docs. 13, 100), the second of which supersedes the first, so the Court only considers the Amended Claim (Doc. 100). Sirag claims interest in: (1) $987,000.00 wired to Ohansons on August 26, 2020 and held in Ohansons' Chase bank account; (2) $52,214.63 held in Ohansons' Chase bank account; and (3) 2,972.31 ounces of silver, identified as line items 1-5 of Defendant Property 3 or Defendant Property 4 listed on Doc. 82-2. (<u>Id.</u> at 1-2.) Sirag represents it has been buying metals from Ohansons for over 22 years and just hours before the United States seized Ohansons' Chase bank account, Sirag sent a wire transfer to Ohansons in the amount of $987,000.00 to buy metals. (Doc. 142, at 4.) Sirag claims Ohansons served as bailee for the claimed currency through their customary business practice, where Ohansons

held Sirag's funds until a purchase was completed. (Id. at 5.) The deposited funds belonged to Sirag until the subject metals were delivered to it. (Id.) As to the additional currency of $54,214.63, it argues Ohansons was also the bailee on behalf of Sirag because the exchange for metals was never fully consummated. (Id. at 6.) And as for the silver, Ohansons possessed it as bailee for Sirag when it was seized, and it was not for purchase. (Id.)

Since Sirag claims a bailment, the Court must examine California state law for bailments, as this is where the transaction took place. California law provides a bailment "is the deposit of personal property with another, usually for a particular purpose, under an express or implied contract." WMC Mortg., LLC v. JPMorgan Chase Bank, N.A., No. C076768, 2016 WL 238569, at *4 (Cal. Ct. App. Jan. 20, 2016). The Court is satisfied based on Sirag's claim and relationship with Ohansons that the wire of $987,000.00 on August 20, 2020 was a bailment, and not a sale, because Sirag had not yet received anything in return, and there is no indication the money was unreturnable from Ohansons if a purchase was not completed. Sirag also provided the United States tracing for the wire for this money. (Doc. 136, at 20.) At this stage, Sirag has put forth a colorable or possessory interest in $987,000.00 of Defendant Property 1, sufficient to establish Article III standing. See $11,320.00 in U.S. Currency, 880 F. Supp. 2d at 1323 (citation omitted).

As to the additional claim of $54,214.63 and 2,972.31 ounces of silver, the Court finds Article III standing has not been established. Sirag fails to put forth any allegations for these two claims that illustrate a colorable interest sufficient to satisfy the case-or-controversy requirement. Kadonsky, 216 F.3d at 508 (citation omitted). The Court finds these two claims are bare assertions of ownership that do not establish standing. $11,320.00 in U.S. Currency, 880 F. Supp. 2d at 1323 (citations omitted). As a result, the Court **STRIKES** Sirag's claims for $52,214.63 held in Ohansons' Chase bank account and 2,972.31 ounces of silver.

Turning back to Sirag's claim of $987,000.00, the Court addresses Sirag's statutory standing. The United States makes no arguments about Sirag's statutory standing, and there is no indication from the Court's review that Sirag failed to comply with the Supplemental Rules. Thus, the Court finds Sirag's claim for $987,000.00 wired to Ohansons and held in Ohansons' Chase bank account meets the requirements for Article III and statutory standing and shall proceed.

2. Kahan

Next, the United States moves to strike Kahan's claims for failure to establish standing. (Doc. 136, at 26.) The United States argues Kahan's transactions underlying his claims involve him purchasing platinum from Ohansons, thus a sale, and not a

14

bailment.  (Id.)  It argues Kahan's identification of the platinum is only speculative, and several other claimants have claimed the same platinum.  (Id.)

Kahan filed two claims (Docs. 15, 83), the second of which supersedes the first, so the Court only considers the Amended Claim (Doc. 83).  Kahan claims interest in: (1) $22,427.20 wired to Ohansons and held in Ohansons' Chase bank account; (2) twenty-five ounces of platinum identified as line item 20 of Defendant Property 4 listed on Doc. 82-2.  (Id. at 1-3.)  Kahan joined the response of other claimants because it has a small claim, and it is not cost-effective for Kahan to incur the legal fees and expenses to research and draft its own response.  (Doc. 147, at 1 n.1.)  Kahan asserts it transferred funds to Ohansons in good faith and in connection with a legitimate business transaction to secure the release of the platinum it agreed to buy on the same day the seizure occurred.  (Id. at 3-4.)  It also conclusory alleges a constructive trust arose in its favor.  (Id. at 3 n.5.)

The Court is not satisfied Kahan established Article III standing.  While it complied with the Supplemental Rules to establish statutory standing, there is no indication Kahan has a legitimate ownership or possessory interest in the funds or metal claimed.  While Kahan tries to rely on arguments of the other claimants, those arguments do not help the Court because they are not connected to the facts of Kahan's actions and alleged claim.

Without more, the Court cannot find Kahan has shown a colorable ownership or possessory interest in the claimed property, so the Court **STRIKES** Kahan's claim (Doc. 83).

   3. Talfel

Next, the United States moves to strike Talfel's claims for lack of standing. (Doc. 136, at 29.) Talfel delivered 8.25 kilograms of scrap valuable metals to Ohansons which was sent to another company in Utah to be refined. (Id.) Through a contract, Ohansons was permitted to return the refined metals, equivalent metals, and/or proceeds, minus fees, to Talfel. (Id.) Meanwhile, Ohansons and the refiner had a running credit ledger, and the refiner was not required to return the refined metals and did not return them. (Id.) The United States argues that because metals were not returned to Ohansons, Talfel lacks standing to any of the metals in Defendant Property 3 or Defendant Property 4. (Id.) As to the money in Ohansons' bank account, the United States argues Talfel is an unsecured creditor and did not trace any money from the transaction to the bank account, and has no ownership or control over the bank account, so Talfel lacks standing. (Id. at 29-30.)

Talfel claims three interests: (1) $278,127.64 seized from Ohansons' Chase bank account; (2) 142.04 ounces of pure gold, 26.20 ounces of pure silver, and 0.076 ounces of pure platinum from Defendant Property 3; and/or (3) 142.04 ounces of pure gold, 26.20

ounces of pure silver, and 0.076 ounces of pure platinum from Defendant Property 4.  (Doc. 17, at 1-2.)  It argues it has established standing because it has alleged its ownership of $278,000 in precious metals and/or currency, and it has set out sufficient facts to make its ownership claim plausible.  (Doc. 146, at 4-5.)  Talfel entered a refining arrangement with Ohansons in August 2020, and the purpose of this agreement was not to sell or transfer ownership of precious metals to Ohansons, but Ohansons facilitated the refining process and received a service fee.  (Id. at 5.)  Thus, Talfel represents it is owed approximately $278,000 of the precious metals or currency seized from Ohansons.  (Id.)

The Court finds Talfel satisfied statutory standing by complying with the Supplemental Rules.  However, the Court is not convinced Talfel established Article III standing because it has not shown an ownership or possessory interest in specific property. By Talfel's own admissions, it is unsure whether it is owed gold or currency from the Defendant Property, because it handed over scrap metal to Ohansons and is unsure where the metal was in the refining process.  (Id. at 5.)  Furthermore, Ohansons provided that Talfel's metals were at the refiner when the seizure occurred, suggesting there is no connection by Talfel to the assets seized from Ohansons. (Doc. 146-2, at 2-3.)  Based on the foregoing, the Court finds Talfel failed to establish an ownership or possessory

interest in any specific property, thus Talfel lacks Article III standing.  The Court therefore **STRIKES** Talfel's claim (Doc. 17).

    4. <u>Uneek</u>

Finally, the United States moves to strike Uneek's claim for lack of standing.  (Doc. 136, at 31-32.)  It argues the transaction underlying Uneek's claim involved Ohansons buying gold dust from Uneek in exchange for money, so it was a sale and not a bailment. (<u>Id.</u> at 32.)  Further, the United States argues Uneek only has an unsecured interest in the bank account, which it neither controlled nor owned.  (<u>Id.</u>)

Uneek claims one interest in $166,938.83 of Defendant Property 1.  (Doc. 35, at 1.)  It claims it had a purchase money security agreement because Ohansons delivered a check to Uneek for $166,938.83 as payment for gold dust, but the check bounced.  (Doc. 144, at 4-6.)  Uneek argues it perfected its purchase money security agreement by filing financing statements about the transaction with the California Secretary of State.  (<u>Id.</u> at 6.)

The Court finds Uneek meets the statutory standing requirements, as it has complied with the Supplemental Rules.  The Court is also satisfied Uneek has satisfied the burden of Article III standing at this stage of litigation by asserting a potential possessory interest in the money.  The United States argues Uneek neither controlled nor owned the bank account, which the Court acknowledges, but by having an agreement with Ohansons that

provides proof of a required payment, along with a bounced check, Uneek has established a possessory interest in the money. See United States v. $38,000.000 Dollars in U.S. Currency, 816 F.2d 1538, 1544 (11th Cir. 1987). As such, the Court **DENIES** the United States' motion to strike the claim of Uneek.

## IV. OTHER PENDING MOTIONS

There are several other pending motions. The Court first considers the United States' motion to stay the Court's consideration of the motion to transfer and other discovery related filings and deadlines set by the Court (Docs. 109, 112, 114, 115, 116, 118). (Doc. 120.) The United States moves to stay the Court's consideration of these motions pending a determination of whether claimants have standing. (Id. at 2.) It appears from the motions to strike filed by the United States, it has inquired into some claimants' standing, but it has yet to notify the Court that it received responses to all Rule G(6) special interrogatories. The claimants oppose the motion to stay. (Docs. 126, 128, 129, 130.)

"The power to stay [a] proceeding[] is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). A district court therefore has broad discretionary

authority in determining whether a stay is appropriate. <u>CTI-Container Leasing Corp. v. Uiterwyk Corp.</u>, 685 F.2d 1284, 1288 (11th Cir. 1982). The Court is reluctant to move forward with considering the other pending motions when the United States has not responded, and has likely relied on its motion to stay in not doing so. The Court finds no harm to the litigants in finding a short stay appropriate following the rulings made herein.

Based on the foregoing, the Court **GRANTS** the United States' motion to stay (Doc. 120) and **STAYS** this action pending resolution of all Rule G(6) special interrogatories. The United States is **DIRECTED** to file a motion to lift the stay with the Court within **TEN DAYS** of receipt of all responses to Rule G(6) special interrogatories, or failure to comply with them. Once the stay is lifted, the Parties must file responses to the outstanding pending motions within **FOURTEEN DAYS**, and replies thereto shall be filed within **FOURTEEN DAYS**.

## V. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that the United States' motion to strike the claim for Virtue (Doc. 119) is **GRANTED** and the United States' motion to strike various claims (Doc. 136) is **GRANTED IN PART and DENIED IN PART**. The Court **STRIKES** the claims of Virtue (Doc. 32), Kahan (Doc. 83), and Talfel (Doc. 17) and **STRIKES IN PART** the claim of Sirag (Doc. 100). Further, the

United States' motion to stay (Doc. 120) is **GRANTED**.  The Clerk is **DIRECTED** to **STAY** this case pending resolution of the Rule G(6) special interrogatories.

    **ORDER ENTERED** at Augusta, Georgia, this 30th day of September, 2024.

 

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA